I will, I will, we will appreciate if you stick to our time at the table and conclude your remarks when the red light goes on, unless you're answering a question from the court. The first case of the morning is 23-507-03, McVae v. Perez. Yeah, Mr. Roberts. Good morning, may it please the court, counsel, my name is James Roberts, together with my co-counsel, we represent the appellants in this matter. In this case, Trooper Jesse Perez shot and killed Marcus McVae as Mr. McVae was running away from Trooper Perez, unarmed and empty handed, all facts which Trooper Perez was aware of at the time he shot and killed Mr. McVae. Mr. Trooper Perez shot four different bullets, three of which struck Mr. McVae all from behind. The autopsy report shows that all three bullets struck him from behind, none were in close range. Trooper Perez tries to justify his use of deadly force by claiming that he was in fear for his life by claiming that Mr. McVae threw a rock at him. Whether or not that rock justified the use of deadly force is a fact issue for the jury to decide. If the jury in this court do decide that that rock justified the use of deadly force, the justification for the use of deadly force ceased when that rock was on the ground rolling down the hill behind Trooper Perez. Trooper Perez's own expert testified that that's when the justification for the use of deadly force ceased. However, it was not until after the justification for deadly force ceased, the rock was on the ground at Trooper Perez, that he pulled his gun from his holster and began firing at Mr. McVae. This court stated in Amador V. Vasquez, a 2020 case dealing with a 2015 shooting that Judge Willow was on the court for, I quote, an exercise of force that is reasonable at one moment can become unreasonable in the next, but the justification for the use of the force has ceased. To say otherwise would grant officers an ongoing license to kill an otherwise unthreatening suspect who was threatening earlier, end quote. And that's the law that should be controlling in this case. Trooper Perez claims that he was justified in using force because of a rock, but that rock was on the ground rolling behind him prior to him even pulling his gun and shooting Mr. McVae. I point the court to Baker v. Coburn, which is a 2023 case out of this court. Judge Willett, Judge Inglehart, you were both on the panel in that case. It was dealing with a shooting from 2018. In Baker, officers were attempting to have a driver exit his vehicle who was parked at gas pumps at a gas station. One of the officers stepped in front of the vehicle to get a better view inside the car. There was some dispute as to whether the brake light turned on or the car moved, but the officers began shooting at the driver. They used deadly force at the gas pumps. The driver then steered around the officer and began safely driving away. Officers then shot from behind, killing the driver. This court found that the officers were justified in using deadly force at the gas pumps. They found that qualified immunity applied there, but moments later when they were firing at the back of the vehicle as the driver was fleeing away, that was objectively unreasonable because the threat of the officer being hit by the car was no longer present. And that's what we have here. If there was a threat justifying the use of deadly force, this rock, that was no longer present when Mr. McVeigh was fleeing on foot, empty-handed, and unarmed. And we know that Trooper Perez was aware that he was empty-handed and unarmed because that's in the record. Trooper Perez had already searched Mr. McVeigh at the traffic stop. He searched him, not simply a pat-down, but went inside his pockets and knew that there were no weapons. He also testified that he didn't take his eyes off of Mr. McVeigh as he was running away and he saw that he never reached for a second rock or anything else that could have been used to threaten or harm him. Amador V. Vasquez, what I quoted earlier, is also important in this case, I believe. In Amador V. Vasquez, officers had multiple encounters with a suspect who was attempting to harm them. He swung metal chairs at them, he tried to stab them with a knife, and he even went for their patrol car where a shotgun was inside. The officers did not shoot him or use deadly force during any of these moments. It was only after these things ended and the suspect was standing 30 feet away, stationary with a knife, that the officers used deadly force. The officers then tried to justify their use of deadly force based off of these prior threats. And the court said no. That's where the court starts using this language of there is no ongoing license to kill an unthreatening suspect now because of threats earlier. Counsel, you mentioned the point when the defendant in this case, the officer, drew his sidearm. Where is that? Is that from a deposition testimony or where are you citing to on that? Yes, Your Honor. At 820 of the record is where the timing of all of this happens. This is when I am deposing Trooper Perez as expert. We go through all the timing of when the justification for the use of force ceased, when he unholstered his gun, when the first shot, the second shot, the third shot, and the fourth shot. That's his own testimony is that he drew the gun at that point in time? That is the expert's testimony, his own expert's testimony. I believe he also has testimony of when he pulled the gun, but that's actually on the video. The video shows when he unholstered his weapon. When he unholsters his weapon on the video, when you watch, you can see the rock is already behind him on the ground. That's an uncontested fact. You don't contest that the person that he was chasing, the decedent in this case, is the one who threw the rock, right? That is not on video, but again, that would be a fact issue for the jury to decide, but there were no other people in the woods, right? I'm not going to sit here and argue with you on where that rock came from. I think it's evident where the rock came from. The question is whether or not the rock justified the use of deadly force. A rock is not per se deadly force. You say it's evident where the rock came from, but I thought it was your position that the decedent did not throw a rock, or you're saying there's just no evidence that he threw a rock? There is no evidence that he threw the rock. It's not on the video. The rock clearly comes, we know the direction the rock's coming from, whether it was kicked up as he's turned to run away, whether or not it was thrown, that's a fact issue for the jury to decide. It's also a fact issue for the jury to decide whether or not a rock justifies the use of deadly force. When you look at the video, you see the rock going down on the ground. It does not appear to be at a level that would cause serious bodily injury. It's not at his head, at Trooper Perez's head. It's not going at an extremely fast rate, so again, these are fact issues, but I think what's more important is- So just to nail this down, the record site, the record evidence for your assertion that the rock was on the ground before the firearm, before the officer pulled his weapon, what is the best record evidence for that? Well that would be a record at 820, excuse me, at 820 is the testimony discussing this from the expert. It's also in the video itself, which is 271 of the record, really from the 1932nd mark to the 1935 second mark is when the shooting incident occurs, but when you watch that- The video itself doesn't show the rock on the ground. It does, your honor. It does show, because I see the rock on the video, I've watched it several times, I see the rock pass. Yes, your honor, and you can see that it is on the ground before Trooper Perez pulls his weapon. As you just saw, you say you see it pass, it's passed before he pulls his weapon out, it's also on the ground. You can see in the video, his expert testifies to that at 820, it's on the ground, at that moment the justification for the use of force has ceased. And I think that's really the question, whether or not the justification for the use of force had ceased prior to Trooper Perez using deadly force. And each one of these shots need to be analyzed. The first shot, the second, the third, the fourth. And that's why Baker, I believe, is so important, because there was justification for the use of deadly force at the pumps, and then moments later, there was not justification for the use of deadly force because the threat had ceased. He was no longer standing in front of his vehicle. Even if the court or the jury would have determined that the rock did justify the use of deadly force, because that justification had ceased prior to Trooper Perez even pulling his gun, there was no longer an ongoing justification to shoot at Mr. McVeigh as he ran away. The officers in Baker argued that even if Baker had safely passed them and was no longer an immediate threat, they were permitted to continue shooting at the car until it was disabled, and this court said, not so. There still has to be an ongoing threat. How, um, what does our case law say about defining the moment of threat, because you seem to define it pretty narrowly as a temporal matter, um, to mean only the moment that Trooper Perez fired his gun, but we have some case law that directs us to look at all the circumstances that lead up to that moment, um, and to focus on the act that led the officer to discharge his weapons. So I guess I'm just asking on your temporal definition of moment of threat, because yours seems pretty narrow. Yes, Your Honor, and I'm bringing that moment of threat, um, and I guess moment of threat is a phrase that's also used by this court for a moment of threat doctrine, which, um, I've briefed that I don't think is applicable in this case, but I don't think that's what you're asking about. Correct me if I'm wrong. The moment of threat that I think we're talking about here is really the moment of force. I think moment of threat may not really be the appropriate term to use. It's the moment that force was used, and the moment that force is used needs to be happening when the threat is still happening. This moment of threat and moment of force need to coincide, um, and that's what Baker says and that's what Amador says, that you don't get to use force against someone now for a threat that they posed earlier. They have to be at the same time, and so, um, that's what we have here. We don't have contemporaneous use of force and threat. We have threat, rock on the ground, then pulling of gun, then shooting, and just as in Baker where there was a threat that moments later did not justify the use of force as the driver was driving away, moments after the rock hit the ground, it didn't, there was no longer a justification to shoot Mr. McVeigh as he's running empty handed and unarmed, and I think a great illustration of this is in, um, a Seventh Circuit case, Ellis v. Wynalda, um, which is out of the Seventh Circuit in 1993, um, it's in the briefing, in that case an officer arrives to a burglary in progress, sees a suspect leaving, orders them to stop. When the suspect hears that, he turns, throws a bag at the officer, it hits the officer and falls to the ground, the suspect takes off running empty handed, and the officer shoots him from behind. The Seventh Circuit found that there was no longer a justification for the use of deadly force after that bag hit the ground. They explained that if the officer had fired while the bag was being thrown or before the bag had been thrown and there was a threat in the hand of the suspect, then we may have a different conclusion, but because the threat was the bag, it had already hit the ground prior to the use of deadly force, and at the time deadly force was used, the suspect had empty hands and was running away, there was no longer a threat justifying the use of deadly force, and that deadly force was objectively unreasonable. The Fifth Circuit has cited Ellis in the Lytle case, um, for the proposition that while force may be reasonable at one moment, it may become unreasonable in the next if the justification for that force has ceased, um, and that's what we have in Baker, that's what we have in Amador, um, that's what happened in Little, and that's what the court in the Seventh Circuit in Ellis explained. I'd also like to point the court to Poole v. City of Shreveport, um, a case out of the Fifth Circuit in 2021, Judge Willett, you were on that panel as well, um, and that was dealing with a shooting from 2017, um, two years before the shooting in this case. In that case, um, this court stated that common sense in the law tells us that a suspect is less of a threat when he is turning or moving away from the officer, and then went on to say that an officer violates clearly established law if he shoots a visibly unarmed suspect who is moving away from everyone present at the scene, and that's exactly what we have here. Um, now, I, I will note that in Poole, there was not a, um, altercation prior to the use of deadly force in that case. In that case, the officer shot someone who was trying to get into their car, but I would note that the factual disputes that the court looked at to see if the jury were to resolve them in plaintiff's favor would qualified immunity be denied, those three facts were did the officer give a warning that deadly force was going to be used, did the officer know that the suspect's hands were empty and he was not holding a weapon, and was the suspect turned away from the officer at the time of the shooting? The court found that a jury could reasonably determine and resolve all those facts in the favor of the plaintiff, and therefore qualified immunity would be denied, and that shooting would be objectively unreasonable. Well, in this case, the jury would have to resolve all of those questions in the favor of appellants, because it is clear that no warning shot, no warning was given just prior to the shot. It's clear that the officer knew that Mr. McVeigh's hands were empty, and it's clear that he knew he was unarmed, and then it's also clear that Mr. McVeigh was turned and running the opposite direction, as the video shows that, and the autopsy report shows that all three bullets that struck him came from behind. So just as in Poole, um, where these three factual disputes that could be resolved by a jury in the plaintiff's favor show that it was objectively unreasonable to shoot someone who's turned away, that should also control in this case. I know it's your position that the video doesn't show, um, McVeigh throwing a rock, but even if it did, your position would be that even if he did throw the rock, the video shows it plainly, you would still argue that the officer is not entitled to qualified immunity? That is absolutely correct, Judge. Because the threat had ceased by the time the shots were fired. That's great. The threat had ceased before Trooper Perez even pulled his gun, um, and the timing of these is laid out in the record, um, pages 820, 821, and 822 of the record, um, it is clear, I mean, it's uncontested, that the rock was on the ground prior to Trooper Perez pulling his gun and shooting, and therefore, even if the jury or this court were to determine that Mr. McVeigh threw that rock, it would not matter, because the threat, the justified deadly force had ceased. I see that my time is up. If there are no more questions, I will sit down. Thank you, sir. Thank you. Time for rebuttal. Mr. Mazzara. May it please the Court, Marcus McVeigh attempted to commit capital murder, and Ranger Perez shot him in the split seconds surrounding that attempt. Before that, McVeigh broke Perez's finger, struck Perez, resisted multiple baton strikes, and two tasers. No analogous case establishes that it is unconstitutional for a peace officer to defend themselves with a lethal force when a criminal or suspect is attempting to murder them. What is your best record evidence that McVeigh, in fact, threw a rock at Officer Perez? Yes, Your Honor. The record site would be, the record site for the video, which would be ROA 271, and it would be . . . It shows him throwing the rock. Your Honor, not to sound flip, but, I mean, rocks don't typically have wings. This was a large rock, perhaps about a football size. This is not the sort of rock that could be kicked up, for instance, you know, while somebody is fleeing, especially not with the trajectory and the rate of speed it looks like it's going in the video. I believe it's minutes, 19 minutes, 29 seconds, through about 19 minutes, 31 seconds. So on practically identical facts, this court in a case called Mendez upheld qualified immunity when a federal officer, when a federal officer shot a similarly violent criminal in the back while he was fleeing 15 feet away. Now appellants, perhaps knowing this, expressly declined to address this half of their burden, to identify an analogous case in their brief, on page 13 of their brief. And because they decided not to point to, and declined to point to an analogous case, they thereby failed to meet their burden, and because qualified immunity generally protects all but the plainly incompetent, and the incompetent, and those who knowingly violate the law, this court should affirm the district court. In Mendez, correct me if I'm wrong, was the officer sort of immobilized in some way? Was the officer injured in some way, vision blurred, something similar? Your Honor, that is a factual distinction between Mendez, for instance, in this case, that he had not been hit in the head, for instance, was not dazed. But this was a fairly lengthy chase through the woods where there were several physical altercations between the two. Mr. McVeigh had, again, been taken down to the ground and resisted multiple baton strikes. This was a very strong man. It was probably obvious that he was high on some sort of drugs. And then on top of that, at some point during the altercation and the chase, Perez's finger was broken. And while that's not the same thing as being struck in the head, nonetheless, this all occurred during a series of escalating acts by McVeigh that culminated with his, you know, So, now I don't have much to say today, but I wanted to comment on three things. The first I wanted to comment on is how and why McVeigh has failed to meet their burden. The second, I want to discuss Mendez a little bit more. And then, again, the third, I just want to make very clear, there is no genuine dispute as to any sort of, as to any material fact here, particularly about the rock and who threw the rock. All right? It might be, we might not see McVeigh throw the rock, but circumstantial evidence is still evidence. So first, as I mentioned before, McVeigh, at page 13 of his brief, says that because the district court didn't address whether or not there was a clearly, whether or not the constitutional right here that he alleges is violated was clearly established at the time, that they weren't going to address that. But it's their burden to meet, to not only identify a constitutional right that was violated, but one that was clearly established at the time. But declining to do so, they just simply, you know, waive that argument and fail to meet their burden. And this case can be affirmed on that grounds alone. Now, McVeigh does cite some cases in their brief that, you know, one could argue they are trying to use as analogies. For example, they cite to Graham and Garner. But those have been held by the Supreme Court in Brousseau as too general and not specific enough to satisfy the requirement to find an analogous case. McVeigh also cites to Little and Wynalda, which his counsel brought up at the stand here today. First of all, Little, as far as I can tell in the case, did not involve any video evidence. It's pure he said, she said. It also involved a vehicle. This is, and the question was whether the vehicle was moving away or towards a police officer at the time and how far away the vehicle was. Here we have a video. And then secondly, Wynalda is an out-of-circuit precedent and Mendez is the precedent that controls here in the circuit. And there's no other Supreme Court case that, you know, basically contradicts Mendez. Now, Mendez is important because similar to this case, the decedent in Mendez was high on drugs. In that case, cocaine. Here, methamphetamine. Now, that was not known to the officers, but given the, I guess you should say, you could say the vigor and the energy of the decedent and their ability to withstand the attempts at the, by the police officers to subdue them is probably obvious. Anyway, Mendez likewise fought the police officer, resisted being repeatedly hit with a baton, police baton, just like here, and continued to escalate the amount of force. In that case, actually succeeding in hitting the officer in the head. And he, as he was fleeing, as he was turned away from the officer, the officer shot him. And that case ruled that that was acceptable because again, the, with respect to the threat that a fleeing felon in this sort of context presents, right, it's not just in the exact moment that lethal force is used, but it's in kind of the overall, you know, context of the event in question. Is that person just trying to get another vantage point to continue his violence? Is he going to continue, again, committing violence, not just against the police officers, but the public at large as he effectuates his escape? And so it's not just when the police officer is in the moment of danger. So the last thing, as Garner put it, an officer's use of deadly force is not excessive and thus no constitutional violation occurs when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others. And as numerous Supreme Court cases have said, qualified immunity only applies when the officer is plainly incompetent or knowingly violates clearly established law, which did not happen here. In fact, quite the opposite. This is a case where the acts of the police officer are aligned with existing case law. These reasons and those in our brief, Perez asked that this Court affirm the District Court. Now, is there any further questions? I . . . A quick one. Mr. Roberts used the word uncontested. He said it's uncontested that the rock was on the ground before Trooper Perez pulled his weapon. Is it uncontested? Your Honor, I don't think it matters in this case under the law whether the rock was on the ground. When you watch the video, I mean, whether it's three seconds or 1.8 seconds, and I know we have argued, we argued below that it wasn't three, it was 1.8. It doesn't matter. You watch this video, the rock and the shooting happened practically simultaneous. I mean, I can't even say three seconds. I can barely get three seconds out in three seconds. I mean, this happened so quickly, right? And it's not even clear that Perez would know that the rock's on the ground. I mean, why is it not, Matt, why is it not argued that once the rock is past Perez in the air, that that's when the moment of threat ceases, right? And what weight do we give the fact that shots came from behind? Again, under Mendez, I would say that that has no weight here. I mean, frankly, he was closer to Trooper Perez than Mendez was in Mendez. He had engaged in similar amounts of violence, just hadn't succeeded, thank God, I mean, in hitting Perez in the head with this rock. And there was nothing to indicate, like, I believe it's, I believe one of the cases they cited was, and discussed was Amador, where the, where the decedent had been, had backed away 30 feet and had his hands in the air as if he were surrendering. All right, that was not the case here. McVeigh was continuing to do what he had done from the beginning when he ran across that highway, which is flee and then resist. Okay. Thank you. Is there no further questions? Thank you. Okay. Mr. Gossin. May it please the court, counsel. First off, counsel brought up Mendez, and I just want to immediately distinguish that case. Mendez prevented the officer from calling help each time the officer tried to use his radio to call for help. That's a 329 in Mendez's opinion. Mendez also disarmed the officer of the baton. Mendez grabbed for the officer's pistol when the holster came undone, and when the officer shot Mendez, true, it was in the back, but the officer was concussed, disoriented, weakened, suffering from partial vision loss, saying he saw black, losing consciousness as a result of Mendez hitting him in the temple with extreme force. Well, how bad does the officer have to be wounded before he can . . . No. No, Your Honor. It's not about the wound. I'm trying to express the difference in the level of force that Mendez used against the officer, versus here, where it is all flight, you know, leading up to the moment of the shot. There is, you know, the appellee says that Mendez, or that McVeigh swung at Trooper Perez. However, that's not . . . it's clear from my view of the video, which I've watched numerous times, and I know Your Honors have too, you know, that he never takes a punch at him. And as to the broken finger, yeah, he broke his finger exercising force on McVeigh. He was hitting him and using his baton, and McVeigh was covering his head. It's clear from the video that he did not swing at him. Now, Judge Willett, I know you asked about a record site as for the rock passing. So I'm doing my best here. I have it at 262-263. It will be at the bottom of 262. That is appellee's motion for summary judgment. Now, they use it to criticize our position, but they, in my opinion, acknowledge that the rock had passed half a second . . . had passed Trooper Perez half a second before Trooper Perez goes on holster his gun. Do you disagree with the . . . I think the district court had the timing between the rock passing and the last of the four gunshots, I believe, all occurring within 1.368 seconds. That's a pretty precise measurement. Do you disagree with that? Obviously, that's based upon the video. Yeah. We have it at . . . it was 2.46 seconds, and we have the site as ROA 824. Okay. So it was seconds, Your Honor. Do you know where this number came from? Like I said, it's pretty precise, so somebody measured it. Was it in an expert report, perhaps, or something? I believe . . . I don't think the district judge took out . . . No, no, no. I believe the basis was relying on, I believe it is, Ranger Phillips is the expert. Okay. And so I believe he had broken it down into . . . he had taken the video and made a subclip of it, and had broken it down into time. So that's where I think the district court is getting it from, but . . . Let me ask you also, as a matter of practicality, if we were to agree with you and remand the case in terms of material facts of what happened, there were only two people there, one of whom is deceased, and then the defendant, in this case, Officer Perez. We also have a video, assuming that Officer Perez testifies and the jury sees the video, what would that trial look like in terms of material facts, unless Officer Perez says something that's really entirely impossible, it would seem like his testimony would be the only testimony the jury could hear about the actual events in that time period? By time's running out, Your Honor, I would say that the video would contradict, which the video is evidence, would contradict his testimony and give a jury a reasonable basis to disagree. Thank you, Your Honors. That's it? Okay. Thank you, gentlemen.